# CHARLESTON

## DUNCAN v. JACOB DOLL & SONS.

Submitted November 24, 1914.   Decided December 22, 1914.

1. FACTORS—*Consignment Contract—Operation and Effect.*

   A contract, whereby pianos are to be delivered by the owner to a consignee at a certain price, for the purpose of sale by the latter on the installment plan, providing for the taking of lease contracts from the individual purchaser, in the name of the consignor, and the turning over of the same and any rights thereunder to him, together with any cash received, and further providing that the consignor "shall receive all first payments and second hand instruments taken in exchange, together with all subsequent payments until the agreed consignment price of instrument is fully paid," and containing no provision respecting the disposition to be made of the lease contracts thereafter, entitles the consignor to retain the lease contract and collect all the money due and payable by the purchaser. The language above quoted does not imply that, after a sum equal to the consignment price is paid, the consignee is then to be the owner of the lease contract and entitled to collect from the purchaser the balance of the purchase money. It is employed to designate the shares of the respective parties in the profits on sales, and to secure to the consignor his entire share before the consignee is entitled to participate.  (p. 382).

2. SAME—*Consignment Contract—Construction—Commission.*

   Such a contract is one of agency, authorizing sales upon commissions measured by the difference between the consignment price and the price to the purchaser; and for the payment of his commissions the consignee must look directly to the consignor. The relation of debtor and creditor is thereby created between them.  (p. 383).

3. SAME—*Consignment Contract—Construction.*

   A lease contract taken in the name of the consignee and assigned to the consignor, does not alter the relation of the parties or affect their rights growing out of the agency contract.  (p. 383).

4. TROVER AND CONVERSION—*Cause of Action—Right to Immediate Possession.*

   In order to maintain trover and conversion plaintiff must have a property in, and be entitled to the immediate possession of the thing alleged to have been wrongfully converted.  (p. 383).

Error to Circuit Court, Marion County.

Action by Cloyd H. Duncan against Jacob Doll & Sons. Judgment for plaintiff, and defendant brings error.

*Reversed.*

*R. J. Abbaticchio,* for plaintiff in error.

*Cloyd H. Duncan,* in pro. per.

WILLIAMS, JUDGE:

From a judgment for plaintiff in trover and conversion, brought to recover the value of a certain lease contract alleged to have been wrongfully appropriated by defendant to its own use, rendered by the intermediate court of Marion county, defendant applied to the circuit court of said county for a writ of error and, being refused, was thereafter granted one by this court.

Plaintiff was engaged in selling pianos consigned to him by defendant, a corporation having its principal place of business in New York, under a written contract between them. Plaintiff's rights in this action depend upon a proper construction of that contract. It provided that defendant should furnish plaintiff with pianos, to be received, stored, cared for and insured for the benefit of defendant, all at plaintiff's expense. Plaintiff was to receive them as consignee and was to sell them to individual purchasers on the installment plan. The contract required the plaintiff "to make a written report to the party of the first part within twenty four (24) hours, of any sale of any of the party of the first part's pianos consigned to the party of the second part, and to turn over to the party of the first part immediately after a sale has been made all cash received on such sale, together with any leases and any rights thereunder, received by the party of the second part on the sale thereof; all leases are to be made out in the name of the party of the first part, who shall receive all first payments and second hand instruments taken in exchange, together with all subsequent payments until the agreed consignment price of instrument is fully paid; any lease on such sale to bear interest at the rate of 6%, and to be paid by the retail purchaser." The sales were made in the form of leases to the purchasers. Plaintiff sold a 65

note piano to one Maria Burt and took from her a lease contract, not in the name of the defendant as the contract provided but in his own name, and later indorsed it over to defendant.    He avers that defendant later, acting as his pledgee, exchanged an 88 note piano with Maria Burt for the one he had sold her, receiving a hundred dollars to boot, thereby entitling plaintiff to $35.00 more than he was entitled to for the sale of the cheaper piano.

The action was brought to recover the value of that lease contract, alleged to be worth $135.90 to plaintiff, and interest thereon.    Plaintiff's theory is that, according to the agreement, after defendant receives on any lease contract, taken for the sale of a piano, an amount equal to the price made on consignment to him, he is then entitled, in his own right, to the lease contract and all rights thereunder for any balance due thereon by the purchaser.    This is not a proper construction of the agreement.    It is certainly not what the parties contemplated.    The agreement makes no provision for surrendering the lease contracts to plaintiff at any time.    By its terms all monies received on sales "together with any lease and any rights thereunder," were to be turned over to the defendant.    While it is clearly to be implied that plaintiff was to sell pianos on commission, and was entitled to receive, as his commission on sales, all over and above the consignment price to him, he was bound to look to his consignor for them, and did not at any time have the right to collect from the purchaser any balances on the lease contracts, in his own name.    The lease contracts, and all rights thereunder, belonged to the consignor who alone had any right of action thereon to recover any money due.    Plaintiff was defendant's agent, and for any commissions due him on sales he had a right of action against his principal.    The relation between them was one of debtor and creditor.    The foregoing construction of the contract is borne out by plaintiff's evidence showing a practical construction by a course of long and continuous dealings between them, during which time there were frequent rendering of accounts by plaintiff to defendant. The fact that the lease contract in this particular instance was taken in plaintiff's name does not alter or affect the rights of plaintiff in the premises.    It was taken in that manner in

violation of the terms of the contract, and was assigned by plaintiff to defendant. By the assignment defendant acquired the same right to receive the future payments "due thereon as if it had been taken in its name in the first instance. Plaintiff has clearly mistaken his remedy. If defendant has collected on the Maria Burt lease more than the consignment price of the piano to plaintiff, he is entitled to it as his commission. He has proven that defendant has collected all that is due on it. Plaintiff, not having shown himself entitled to the paper sued for and to its possession, can not maintain his action for trover and conversion of it. *Phillips v. Martiney,* 10 Grat. 333; *Harvey* v. *Epes,* 12 Gratt. 153; and *Haines* v. *Cochran,* 26 W. Va. 719.

An order will be entered here reversing the judgment, setting aside the verdict and dismissing plaintiff's action without prejudice to his right to bring any other appropriate suit or action to recover the amount of money which he claims.

*Reversed.*